HOYT B. WOOTEN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11987.   Promulgated April 29, 1949.

*W. G. Boone, Esq.*, for the petitioner.
*Edward L. Potter, Esq.*, for the respondent.

662

OPINION.

MURDOCK, *Judge*: The first question is whether the petitioner's right to deduct $4,000 accrued as salaries on his books for 1941 is barred by

section 24 (c).[1]  There is no question of the applicability of section 24 (c) (3), nor is there any real question of the applicability of section 24 (c) (1), since the amounts in question were paid by checks issued in September 1942, which was more than two and one-half months after the close of 1941, and, obviously, the mere accrual of these expenses on the books of the petitioner in 1941 was not payment within the meaning of this statutory provision.  *P. G. Lake, Inc.*, 4 T. C. 1; affd., 148 Fed. (2d) 898; certiorari denied, 326 U. S. 732; *Granberg Equipment, Inc.*, 11 T. C. 704.  It is contended, however, that section 24 (c) (2) does not apply.  It must be assumed, in the absence of proof to the contrary, that the three brothers and the sister used the cash method of accounting.  It is argued that they were in constructive receipt of the bonuses in 1941 and consequently those amounts were "includible in the gross income of such person" for 1941.  *Michael Flynn Manufacturing Co.*, 3 T. C. 932; *Ohio Battery & Ignition Co.*, 5 T. C. 283.  The evidence does not support this contention.  The petitioner's brothers and sister did not have drawing accounts on his books.  No separate accounts were kept for them on those books.  There is nothing in the record to indicate that any of them had power to draw checks on the petitioner's bank account.  Their regular salaries, as well as the bonuses, were paid to them by checks drawn by the bookkeeper.  The record does not show that the bookkeeper had any authority to issue the bonus checks without specific instructions from the petitioner.  There was no affirmative action or manifestation on the part of the petitioner to put the money beyond his control and within the control of the employees during 1941.  He did not even know that the bookkeeper had made an entry on the books during 1941.  The entry made was no more than an accrual of the bonuses as an expense of the business.  The bonuses were not readily available to them so that it might be said that they turned their backs on them.  The employees did not constructively receive the bonuses in 1941.  Cf. *McDuff Turner*, 5 T. C. 1261.  See also Regulations 103, sec. 19.42–2.  The deduction does not depend upon whether or not the ultimate recipients of the bonuses actually reported them as income for 1941.  Cf. *Michael Flynn Manu-*

---

[1] SEC. 24. ITEMS NOT DEDUCTIBLE.

　　*　　　　*　　　　*　　　　*　　　　*　　　　*

(c) UNPAID EXPENSES AND INTEREST.—In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued—

(1) If such expenses or interest are not paid within the taxable year or within two and one half months after the close thereof; and

(2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and

(3) If, at the close of the taxable year of the taxpayer or at any time within two and one half months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b).

*facturing Co., supra.* Since all of the provisions of section 24 (c) are met, the Commissioner did not err in disallowing the deduction.

The second issue is whether the amounts paid out for dismantling, moving, and reerecting a radio tower are deductible as ordinary and necessary expenses or are capital expenditures to be recovered through depreciation. The respondent, in his brief, does not attempt to sustain his disallowance of a deduction of $434.46 representing the cost of transmitter tubes. Those tubes had a useful life of less than one year and were regularly charged to expenses by the petitioner. That expenditure was not made in connection with moving the radio tower, but was a part of the total deduction of $6,369.64 disallowed. The $434.46 was an ordinary and necessary expense paid or incurred in 1941 in carrying on the petitioner's business.

The radio station of the petitioner operated on the same frequency as a station in Cedar Rapids, Iowa, and each interfered with the broadcasting activities of the other. The petitioner moved his tower at an expense of $5,935.18, thus eliminating interference of his station with the broadcasting activities of the Cedar Rapids station, and the latter thereafter took steps which eliminated its interference with the operation of the petitioner's station. Thus both benefited. The evidence does not show whether or not these changes were made pursuant to any agreement, but it is unreasonable to assume that the petitioner would have made an expenditure of almost $6,000, which benefited him in no way whatsoever, unless he had some reason to believe that the other station would reciprocate. The purpose of the expenditure of $5,935.18 by the petitioner was not primarily to repair or replace any part of the tower, but was to bring about, indirectly, an improvement in reception for the listeners to the petitioner's radio station. He thus purchased improved reception for his radio listeners by moving the tower at a cost of $5,935.18. That expenditure was "for permanent improvements or betterments made to increase the value of" his property within the meaning of section 24 (a) (2).[2] If the moving of this tower had directly accomplished this result, instead of indirectly, there would be no question but that the expenditure would be a capital expenditure, recoverable through depreciation, rather than an ordinary and necessary expense from the income of one year. The fact that the result was accomplished by indirection does not change the tax consequences. Cf. *Oswego Falls Corporation,* 46 B. T. A. 801; reversed on other points, 137 Fed. (2d) 173.

---

[2] SEC. 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate.

The last issue is whether the Commissioner erred in disallowing portions of deductions for depreciation claimed for 1941, 1942, and 1943. The question here is what is a reasonable amount for exhaustion, wear, and tear (including a reasonable allowance for obsolescence) of the property used in the petitioner's business. The petitioner attacks only the rate used by the respondent. That rate is the same as was used by the petitioner and accepted by the respondent for prior years. The petitioner contends that technical advancements in radio and television up to 1941 showed that his equipment would be obsolete before the end of the useful life on which the rate applied by the Commissioner was based. The petitioner thought that these advancements justified the use of a 10 per cent rate. The taxpayer's mere opinion does not justify a change in the determination. Cf. Regulations 111, sec. 29.23 (1)–6. He did not show how the developments to which he referred would affect any particular asset of his, or when any particular asset would become obsolete. Many of his depreciable assets were nearing the end of their estimated useful lives upon which the old rate was based. In other words, the testimony on this issue is too vague and inadequate to justify any change in the Commissioner's determination.

*Decision will be entered under Rule 50.*