O. Z. AND GERTRUDE ROY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Roy v. Commissioner
Docket No. 12590-93
United States Tax Court
T.C. Memo 1995-23; 1995 Tax Ct. Memo LEXIS 22; 69 T.C.M. (CCH) 1690; January 18, 1995, Filed *22 Decision will be entered for respondent with respect to the deficiency and for petitioners with respect to the addition to tax. For petitioners: Paul D. Spillers. For respondent: Linda A. Neal. POWELL
POWELL
MEMORANDUM OPINION POWELL, Special Trial Judge: This case was heard pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
By notice of deficiency issued April 12, 1993, respondent determined a deficiency in petitioners' 1989 Federal income tax in the amount of $ 4,639 and an addition to tax pursuant to section 6651(a) in the amount of $ 696. Petitioners, residents of Downsville, Louisiana, filed a timely petition in this Court. Following a concession, [2] the issue is whether petitioners are entitled to exclude the gain from the sale of property used as their principal residence under section *23 121. The facts may be summarized as follows. In 1940 petitioners bought 100 acres of land in rural Ouachita Parish, Louisiana. They paid approximately $ 1,600 for the property. They built a house on the property and raised their family there. Petitioner husband worked as a schoolbus driver; petitioners also grew crops and raised livestock for their personal consumption on the property. During the 1940's they grew cotton on the property for sale, but otherwise they have not used the land, or allowed anyone else to use the land, for commercial farming activities. At some time during the late 1980's petitioners decided to sell their property to pay for medical expenses. They attempted to sell the land as one parcel, but they had difficulties. The real estate market was economically depressed, and the large size of the property made it unattractive to individual prospective buyers. In 1988, petitioners conveyed title to approximately 32 acres *24 of the property, including the house, to their son Larry Dale Roy (Larry) and his wife by cash deed with a stated consideration of $ 18,000. Petitioners retained a usufruct, for life, in part of the property transferred. Petitioners did not actually receive the stated consideration; rather the parties orally agreed that Larry would help take care of petitioners in exchange for the property. [3] Petitioners have never received any of the consideration stated in the deed. In preparing their Federal income tax return for 1988, petitioners *25 were assisted by volunteers at a local senior citizens center. The volunteer partially prepared Form 2119, "Sale of Your Home", filling out parts II and III for petitioners. Part I of the Form was not filled in. On the Form, petitioners indicated that they sold the property for $ 18,000, that their basis in the property was $ 9,000, and that they realized $ 9,000 gain on the sale. The Form also indicated that petitioner's one-time exclusion of gain from the sale of the property left $ 0 gain on the property; this figure was entered on Schedule D and on their Form 1040. Petitioners signed Form 2119 and submitted it with their completed Federal income tax return. In 1989, petitioners sold the remaining acreage to an unrelated party for $ 39,600, resulting in a gain of $ 31,391. [4] Petitioners' 1989 Federal income tax return was prepared by a professional tax service; the preparer elected on a facsimile Form 2119 to exclude the gain on the second sale under section 121. *26 Respondent, by notice of deficiency, disallowed the exclusion of the gain from petitioners' 1989 gross income, stating: Your one-time election of up to $ 125,000.00 of the gain on the sale or exchange of your personal residence has been disallowed because you previously elected (and did not revoke the election) to take this exclusion in a prior tax year.
Respondent argues, in the alternative, that the gain resulting from the 1989 transaction was not from the sale or exchange of property "owned and used by the taxpayers as * * * [their] principal residence", for purposes of section 121, because the property sold did not include the dwelling house. Section 121 provides, inter alia: (a) General Rule. -- At the election of the taxpayer, gross income does not include gain from the sale or exchange of property if -- (1) the taxpayer has attained the age of 55 before the date of such sale or exchange, and (2) during the 5-year period ending on the date of the sale or exchange, such property has been owned and used by the taxpayer as his principal residence for periods aggregating 3 years or more.
(b) Limitations. -- (1) Dollar limitation. -- The amount of the gain *27 excluded from gross income under subsection (a) shall not exceed $ 125,000 ($ 62,500 in the case of a separate return by a married individual). (2) Application to only one sale or exchange. -- Subsection (a) shall not apply to any sale or exchange by the taxpayer if an election by the taxpayer or his spouse under subsection (a) with respect to any other sale or exchange is in effect.
Respondent argues initially that petitioners may not claim the section 121 exclusion for 1989, as there was already a section 121 election in effect for 1988. Cf. Robarts v. Commissioner, 103 T.C. 72 (1994). Section 121(c) authorizes respondent to prescribe the manner of making the election. Section 1.121-4(b), Income Tax Regs., [5] *29 requires compliance on the part of the taxpayer. See Estate of Gunland v. Commissioner, 88 T.C. 1453, 1457 (1987). Petitioners did not fully comply with the regulations, omitting much of the information required for a proper election, and, therefore, the purported 1988 election was invalid. Welch v. Commissioner, T.C. Memo. 1979-9, affd. without published opinion 615 F.2d 1365 (8th Cir. 1979); *28 see also Estate of Shelfer v. Commissioner, 103 T.C. 10, 14 (1994). Accordingly, there was no section 121 election in effect at the time they filed their 1989 tax return. [6]
We must then decide whether the 1989 transaction constituted a sale of property used by petitioners as their principal residence. For the meaning of "principal residence", section 1.121-3(a), Income Tax Regs., directs the inquiry to section 1034 and the regulations thereunder. Section 1034(a) provides: SEC. 1034. ROLLOVER OF GAIN ON SALE OF PRINCIPAL RESIDENCE. (a) Nonrecognition of Gain. -- If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him and, within a period beginning 2 years before the *30 date of such sale and ending 2 years after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price * * * of the old residence exceeds the taxpayer's cost of purchasing the new residence.
Generally, whether property is used as a principal residence depends on the facts and circumstances. Sec. 1.1034-1(c)(3), Income Tax Regs. Cases interpreting section 1034 have outlined the parameters of what constitutes a "principal residence" when less than the entire property is sold. In O'Barr v. Commissioner, 44 T.C. 501 (1965), the taxpayers sold an unimproved portion of their residential property, moved to a new residence, and subsequently rented the old residence to their daughter. The Court agreed with the taxpayer that the house and the property surrounding it constituted the taxpayers' old residence "in the sense that we commonly think of a residence as a dwelling house with some surrounding land that is not used for income-producing activities." Id. at 502. *31 We, however, held that the taxpayers could not use the section 1034 deferral of gain because they had not relinquished the old residence in the sales transaction. We followed O'Barr in Hughes v. Commissioner, 54 T.C. 1049 (1970), affd. 450 F.2d 980 (4th Cir. 1971), and Hale v. Commissioner, T.C. Memo. 1982-527, to deny section 1034 treatment where the gain does not include gain related to a sale of the dwelling house. Bogley v. Commissioner, 263 F.2d 746 (4th Cir. 1959), revg. 30 T.C. 452 (1958), provides a somewhat limited exception to the O'Barr rule. In Bogley the taxpayers disposed of only a portion of their residential property, including the dwelling house, because they could not find a buyer for the entire lot. This sale occurred prior to the effective date of section 112(n)(1) of the 1939 Code (the predecessor of section 1034). In the next year, after the effective date of section 112(n)(1), the taxpayers sold the remainder of the property and claimed the section 112(n)(1) exclusion. Respondent determined that *32 the gain could not be deferred. The Tax Court agreed with respondent, holding that events prior to passage of section 112 were irrelevant in deciding whether the property constituted a residence. The Court of Appeals for the Fourth Circuit reversed, holding that whether property was a part of a residence depended on the facts and circumstances. The court reasoned that the property in its entirety "undoubtedly" constituted the old residence, and that the statute did not require the property to be sold in one piece or that the property be used as a residence in the year it is sold. Bogley v. Commissioner, 263 F.2d at 748. The taxpayers retained the remainder of the property not for investment or business reasons, but rather because a purchaser of the entire property was not available. The court held that, as the entire property was sold within the "replacement period" of the statute, the deferral of gain was available on the later disposition. Respondent adopted this rationale in Rev. Rul. 76-541, 1976-2 C.B. 246. Despite the acreage of the property involved in this case, we are satisfied that the entire *33 tract constituted petitioners' principal residence due to the rural nature of the vicinity and the fact that petitioners did not use it for income-producing activities. See O'Barr v. Commissioner, supra. Petitioners sought to dispose of title to their entire tract of land, and they effected this through two transactions. However, in order to fit the sale within the Bogley exception, petitioners must show that the 1989 transaction was part of a series of transactions that included the sale of their dwelling place. The first leg of the transaction was the conveyance, subject to petitioners' usufruct, of the dwelling house and the immediately surrounding land to Larry. Under Louisiana law, "the creation of a usufruct divides the rights of ownership between two or more persons for a period of limited duration. The usufructuary generally has the right to the use of the property and to the fruits which it may produce, while the naked owner alone has the right to alienate the property." Succession of Goode, 425 So. 2d 673, 680 (La. 1982) (citation omitted); see La. Civ. Code Ann. arts. 478 and 535 (West 1980); see *34 also Novotny v. Commissioner, 93 T.C. 12, 17 (1989); Bergman v. Commissioner, 66 T.C. 887, 895 (1976). The transfer of naked ownership is thus the transfer of a future interest, defined for tax purposes as any interest, "whether vested or contingent, limited to commence in use, possession, or enjoyment at some future date or time." Commissioner v. Estate of Phillips, 126 F.2d 851, 852-853 (5th Cir. 1942) (citation omitted), remanding a Memorandum Opinion of the Board of Tax Appeals; see United States v. Pelzer, 312 U.S. 399, 402-404 (1941); see also Commissioner v. Wells, 132 F.2d 405, 407 (6th Cir. 1942), remanding a Memorandum Opinion of the Board of Tax Appeals. Section 121 applies to the sale or exchange of property "owned and used by the taxpayer as his principal residence." Petitioners conveyed merely a future interest in their dwelling house. The interest so conveyed cannot be property "owned and used by the taxpayer as his principal residence" for purposes of section 121, as it excludes, by definition, the enjoyment of *35 the current "uses and fruits." Cf. sec. 1.163-10T(p)(6), Temporary Income Tax Regs., 52 Fed. Reg. 48407, 48419 (Dec. 22, 1987) ("a taxpayer will not be considered to have used * * * a residence during any period that the taxpayer does not have the right to use the property or receive any benefits from the rental of the property"). The sale of a principal residence, for tax purposes, is accomplished only when the benefits and burdens of ownership are transferred to the purchaser. Awalt v. Commissioner, T.C. Memo. 1987-42. As the petitioners did not convey their principal residence, within the meaning of section 121, as part of the 1988 transaction, the 1989 transaction cannot represent the second leg of such a sale. This result, although seeming harsh in this case, is supported by the legislative history of section 121. Congress sought to relieve the tax burden on the elderly who sell their homes but cannot avail themselves of the section 1034 deferral of gain, as the proceeds from the sale oftentimes are used to pay medical and nursing bills. Section 121 affords these taxpayers liquidity, as they do not need to keep their *36 funds tied up in a residence. See S. Rept. 830, 88th Cong., 2d Sess. (1964), 1964-1 C.B. (Part 2) 505, 555. Where the principal residence is not sold, however, the principle supporting section 121 does not apply. Petitioners argue in the alternative that, regardless of section 121, they had entered into a settlement with respondent's Appeals Office that petitioners had no deficiency for the year at issue. Apparently an Appeals Officer had proposed a stipulated decision indicating such a result; however, the document clearly stated that "The proposed stipulation-decision document is subject to review, signature, and filing with the Tax Court by the District Counsel." Subsequently the Appeals Officer withdrew the settlement overtures. [7]
General contract law *37 principles govern the outcome of cases involving the settlements of tax cases. Robbins Tire & Rubber Co. v. Commissioner, 52 T.C. 420, 435-436 (1969), supplemented by 53 T.C. 275 (1969). The formation of a contract requires the objectively ascertainable mutual assent of the parties. Heil v. Commissioner, T.C. Memo. 1994-417. The letter from the Appeals Officer does not rise to the level of an offer, but rather represents a preliminary step towards entering into a settlement agreement. Id. Accordingly, we find that petitioners' "acceptance" did not create a binding settlement agreement. Furthermore, this Court will not enforce a settlement reached at the appeals level unless the taxpayer can show that the settlement documents were signed by respondent's authorized representative and filed with the Court. Cole v. Commissioner, 30 T.C. 665 (1958), affd. per curiam 272 F.2d 13 (2d Cir. 1959); see Estate of Oman v. Commissioner, T.C. Memo. 1987-71. The proposed settlement at issue was never consummated. *38 Decision will be entered for respondent with respect to the deficiency and for petitioners with respect to the addition to tax. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent conceded that the addition to tax is not applicable.↩
3. Although parol evidence is not admissible in Louisiana to challenge the terms of a written land contract, La. Civ. Code Ann. art. 1835 (West 1987), this Court does not necessarily consider written documents to be rigidly binding on petitioners, as we are often concerned with the substance, rather than the form, of agreements. Estate of Craft v. Commissioner, 68 T.C. 249 (1977), affd. per curiam 608 F.2d 240↩ (5th Cir. 1979).
4. The computation of this gain is not in the record.↩
5. (b) Manner of making election. The election under section 121(a) shall be made in a statement signed by the taxpayer and (where required) by his spouse and attached to the taxpayer's income tax return * * * for the taxable year during which the sale or exchange of the residence occurs. * * * The statement shall indicate that the taxpayer elects to exclude from his gross income for such year so much of the gain realized on such sale or exchange as may be excluded under section 121. The statement shall also show -- (1) The adjusted basis of the residence as of the date of disposition; (2) The date of its acquisition; (3) The date of its disposition; (4) The names and social security numbers of the owners of the residence as of the date of sale, the form of such ownership, and the age and marital status * * * of such owner or owners at the time of the sale; (5) The duration of any absences * * * by such owner or owners during the 5 years * * * preceding the sale; and (6) Whether any such owner or owners have previously made an election under section 121(a), the date of such election, the taxable year with respect to which such election was made, the district director with whom such election was filed, and, if such election has been revoked, the date of such revocation.↩
6. It should also be noted that we are not convinced that the 1988 conveyance constituted a sale rather than a gift. The stated consideration was not paid, and it is questionable whether the consideration was ever intended to be paid. Even if petitioners had properly filed a 1988 election, we are not convinced that the second Form 2119 would be invalid. The sec. 121 exclusion applies to one sale↩, and petitioners' primary argument is that the 1988 transaction and the 1989 transaction constitute one sale of the principal residence.
7. Respondent objected to the introduction of the settlement documents, indicating that they are irrelevant. However, one of the issues in this case is whether the parties entered into a settlement, and the documents are relevant.↩